JAMES E. MILLER AND YVONNE H. MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 14856-81.
United States Tax Court
T.C. Memo 1984-336; 1984 Tax Ct. Memo LEXIS 336; 48 T.C.M. (CCH) 409; T.C.M. (RIA) 840336; July 2, 1984. John P. Mahoney, for the petitioners. Carol A. Szczepanik, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEM, Judge: Respondent determined deficiencies in the amount of $7,257.00 and $5,235.00 in petitioners' joint 1976 and 1977 Federal income taxes. The sole issue for determination is whether petitioners are entitled to deductions under sections 702[1] and 704 for specially allocated items from a partnership. All of the facts have been stipulated, and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners James Miller ("James") and Yvonne Miller ("Yvonne") resided in Geneva, Ohio, when they filed their petition in this case and resided in Madison, Ohio, when they filed their 1976 and 1977 joint Federal income tax returns with the *338 Internal Revenue Service Center at Cincinnati, Ohio. On December 26, 1975, petitioners and another couple, William and Margie Blauman, formed a partnership entitled Northeast Realty and Investment, Limited. The capital contributions were divided in the partnership agreement as follows: Capital
Ownership
Partner
Contribution
Interest
James Miller
$45,000.00
45 percent
Yvonne Miller
5,000.00
5 percent
William Blauman
45,000.00
45 percent
Margie Blauman
5,000.00
5 percent
The partnership agreement allocated all depreciation to James for the years 1976 through 1980. The income of the partnership was divided equally among the partners in an amount based on their individual percentage of ownership interest. The agreement provided that upon dissolution of the partnership, distributions would be made to the partners in accordance with their individual percentages of ownership interest. In an amendment to the partnership agreement, dated June 1976, all income, gain, loss, deduction or credit attributable to the partnership's contemplated investment in Tele Media Company of Key West, Limited ("Tele Media"), was allocated to James. The *339 amendment indicates that the funds for the investment, if made, would be provided by James and that: [T]he partners recognize among themselves that any allocation from Tele Media Company of Key West, Limited among the partners of this Limited Partnership of ordinary income or of loss, gain, deduction, or credit, or any part of such items, would be disproportionate to their interest in this Partnership, accordingly, we do recognize that the allocation to the one partner, JAMES E. MILLER, would have a substantial economic effect on him alone * * *. On their 1976 and 1977 income tax returns, petitioners claimed $36,308.00 and $22,565.00, respectively, as deductions from the partnership. Respondent reallocated the partnership loss in the statutory notice of deficiency, allocating petitioners' 50 percent of the loss, which was equal to their combined partnership ownership percentage. The losses claimed by petitioners were disallowed in the amount of $23,101.00 for 1976 and $10,983.00 for 1977. Section 702 provides that each partner in a partnership takes into account separately his distributive share of the partnership items of income, gain, loss, deduction or credit in determining *340 the individual partner's income tax. Section 704(a) states that a partner's distributive share of income, gain, loss, deduction or credit shall be determined by the partnership agreement. However, section 704(b) provides that a partner's distributive share of these items shall be determined in accordance with the partner's interest in the partnership if: (2) the allocation to a partner under the agreement of income, gain, loss, deduction, or credit (or item thereof) does not have substantial economic effect. The test for substantial economic effect examines whether the partner to whom an item is specially allocated for tax purposes also bears the economic burdens and benefits of that specially allocated item. [2]Allison v. United States,701 F.2d 933 (Fed. Cir. 1983); Hamilton v. United States,687 F.2d 408 (Ct.Cl. 1982); Goldfine v. Commissioner,80 T.C. 843 (1983); Harris v. Commissioner,61 T.C. 770 (1974); Orrisch v. Commissioner,55 T.C. 395 (1970), affd. per curiam in an unpublished opinion (9th Cir. 1973). [3]
*341 Section 1.704-1(b)(2), Income Tax Regs., promulgated under the prior law, provided several tests to determine tax evasion or avoidance. [4] With the elevation of the substantial economic effect test from the regulation to the statute, the remaining tests in the regulation are characterized as "[o]ther factors that could possibly relate to the determination of the validity of an allocation." Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 95-96 (1976). As noted in Hamilton v. United States,supra at 414, even under prior law, "[a]n allocation that lacks 'substantial economic effect' will not be saved by meeting the other five factors in the regulation." *342 The validity of an allocation to a partner is discovered by examining the effect of the allocation upon the capital accounts of the partners at liquidation. Hamilton v. United States,supra at 419, n.29. If a partner's allocation of an item of income or deduction is reflected in his capital account and if the liquidation proceeds of the partnership are distributed in accordance with the capital account balances, the allocation has substantial economic effect. Allison v. United States,supra at 939; Goldfine v. Commissioner,supra at 852; Harris v. Commissioner,supra at 786. [5]
In Orrisch v. Commissioner,supra, this Court first considered the viability of a special allocation under section 704(b). We held that an amendment to a partnership agreement allocating Mr. and Mrs. Orrisch the depreciation deduction allowable on two buildings owned by a partnership consisting of the Orrischs and one other couple did not have substantial economic effect. *343 The agreement did provide that gain on the sale of partnership property would be charged back to the Orrischs' capital account to the extent of the depreciation allocation, and the remainder of the gain shared according to partnership interests. Although the capital accounts were to be adjusted for gain charge-back purposes, the allocation lacked substantial economic effect because the adjusted capital accounts were not to be used as the basis for distributions on liquidation and because there was no provision requiring the Orrischs to make up the difference to the partnership in the event the properties were sold at a gain less than the depreciation taken. In the instant case, James was allocated all depreciation deductions of the partnership. Additionally, he was allocated all items from the partnership's purported investment in Tele Media. Applying the capital accounts analysis to the facts of the instant case, it is apparent that the special allocations lack substantial economic effect. See Goldfine v. Commissioner,supra; *344 Orrisch v. Commissioner,supra.The partnership agreement made no provisions for the special allocations to be reflected in James' capital account. Further, the partnership agreement provides that, upon liquidation, proceeds would be divided in accordance with the ownership percentages of the partners, and not based upon their capital account balances. Thus, James does not bear the economic burden of the depreciation deductions allocated to him. Petitioners argue that the special allocations from the partnership's investment in Tele Media should be upheld, since James planned to provide the capital for the investment in Tele Media and because of the short duration of the allocations. Petitioners placed no evidence in the record to show either that James in fact provided all funds for investment, or that he ceased to claim all allocations from Tele Media after 1977. Even if we assume that James did provide the capital, and did cease to claim the allocations, the special allocations to him do not affect the dollar amounts of the partners' share of the total partnership income or loss independent of the tax consequences. *345 The ritualistic incantation of the phrase "substantial economic effect" in the amendment to the partnership agreement does not serve to create the required effect. The business purpose behind the allocations is not determinative, since James' interest in the partnership was not reduced by the special allocations made during the years in issue. See Harris v. Commissioner,supra at 785-786. The limited duration of the allocations does not affect their lack of substantial economic effect. Moreover, we remain unmoved by petitioners' plea of ignorance of the capital accounts analysis, and reject their attempt to reduce the statutory test of substantial economic effect to the level of a mere factor listed in the regulations. We have considered petitioners' other arguments and find them unpersuasive. Therefore, since the special allocations from the partnership to James lack substantial economic effect, petitioners are entitled to deduct only their share of partnership losses reflecting their 50 percent ownership interest under sections 702 and 704(b). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Sec. 704 was amended by sec. 213(d), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1525, 1548, replacing the tax avoidance or evasion test in sec. 704(b)(2)↩ with the substantial economic effect test for taxable years beginning after Dec. 31, 1975.
3. See Magaziner v. Commissioner,T.C. Memo. 1978-205↩; see also McKee, Nelson and Whitmire, Federal Taxation of Partnerships and Partners, par. 10.02 (1977); Willis, Pennell and Postlewaite, Partnership Taxation, sec. 82.08 (3d Ed. 1981).
4. The regulation provides the following tests: "Whether the partnership or a partner individually has a business purpose for the allocation; whether the allocation has 'substantial economic effect', that is, whether the allocation may actually affect the dollar amount of the partners' shares of the total partnership income or loss independently of tax consequences; whether related items of income, gain, loss, deduction, or credit from the same source are subject to the same allocation; whether the allocation was made without recognition of normal business factors and only after the amount of the specially allocated item could reasonably be estimated; the duration of the allocation; and the overall tax consequences of the allocation. * * *"↩
5. See also Hirsch v. Commissioner,T.C. Memo. 1984-52; Magaziner v. Commissioner,supra.↩